IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GREGORY DIGHTMAN, #31768-047, PLAINTIFF, | § § § § | |
| V. | § | CASE NO. 3:25- CV-1028-N-BK |
| LAVONDA DILLARD, ET AL., DEFENDANTS. | § § § § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this *pro se* civil action was referred to the United States magistrate judge for judicial screening, including the entry of findings and a recommended disposition. The Court granted Plaintiff's motion to proceed *in forma pauperis* but did not issue process pending judicial screening. Doc. 7. Upon review of the relevant pleadings and applicable law, all *Bivens* claims alleged in this action should be **DISMISSED WITH PREJUDICE** for failure to state a claim. Plaintiff's Federal Tort Claims Act ("FTCA") claim against the named defendants should be **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction. Plaintiff, however, should be granted leave to amend his complaint to name the United States as the proper defendant as to his FTCA claim.

## I. BACKGROUND

On April 25, 2025, Plaintiff Gregory Dightman, a federal inmate at FCI Seagoville, filed this *pro se* action concerning the medical care he received following a serious leg injury. Doc. 3. Dightman subsequently filed an amended complaint, which is the operative pleading. Doc. 5.

Dightman alleges that, on April 30, 2023, he fractured both bones in his right leg while playing softball on the recreation yard at FCI Seagoville. Doc. 5 at 4. He was transported to Baylor University Medical Center, where he underwent surgical repair, and was later transferred to Vibra Rehabilitation Hospital in DeSoto for physical therapy. Doc. 5 at 8; Doc. 9-1 at 2-9. Dightman remained at Vibra under the care of Dr. Leonard Berry until his discharge. Doc. 9 at 1, 23-24.

After returning to FCI Seagoville, Dightman complained of continued pain, difficulty walking, and repeated falls. He alleges that he was initially assigned to an upper floor, despite his mobility limitations, and fell twice while attempting to use a shower that was not wheelchair accessible. Doc. 9 at 1. He also complains that medical staff prematurely removed his wheelchair, failed to provide appropriate pain medication and physical therapy, and delayed recommended follow-up care with an outside orthopedist. Doc. 9 at 1-2. Dightman alleges he repeatedly communicated these concerns to Health Services, including Health Services Administrator Tammy Winbush and Physician Assistant Lavonda Dillard. *See* Doc. 9 at 25-29; Doc. 9-2 at 1-9. His attaches to his Complaint correspondence that reflects his continuous complaints regarding his mobility, pain, and orthopedic follow-up. *See* Doc. 9 at 25-27.

Dightman asserts that he also pursued an administrative tort claim, alleging that he had not received proper medical care for his ankle injury. The BOP's South Central Regional Office denied the claim on April 3, 2025. Doc. 5 at 8-9. The denial letter recounts Dightman's hospitalization and surgery, subsequent rehabilitation, treatment for ankle pain, outside orthopedic referral, and later medication changes and follow-up care. Doc. 5 at 8-9.

Dightman names Lavonda Dillard, Tammy Winbush, Dr. Berry, Warden C. Rivers, and Assistant Warden Jenkins as defendants, and seeks monetary damages based on the alleged

deficiencies in his medical care. Doc. 5 at 3-4. Because Dightman's allegations required additional factual development, the Court issued a Magistrate Judge's Questionnaire ("MJQ"). Dightman's verified answers, together with additional medical records and correspondence, were filed on August 11, 2025. Doc. 9; Doc. 9-2. The amended complaint and MJQ answers are now before the Court for screening.

## II. PRELIMINARY SCREENING

Section 1915A(b) provides for the *sua sponte* dismissal of a complaint if the Court finds that it (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

The Court liberally construes Plaintiff's filings with all possible deference due a *pro se* litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (pro se pleadings are "to be liberally construed," and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."); *Cf.* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice"). Even under this most liberal construction, however, Dightman's claims fail to state a claim upon which relief can be granted.

**III. ANALYSIS**

Although Dightman filed his complaint on the standard prisoner civil rights form, the named defendants are United States Bureau of Prisons ("BOP") employees and a physician under contract with the BOP, so his constitutional claims are properly construed as arising under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and *Carlson v. Green*, 446 U.S. 14 (1980), which recognized a damages remedy for an Eighth Amendment failure-to-treat claim by a federal prisoner.[1] The elements are essentially the same as those for a § 1983 claim: to state a claim for deliberate indifference to a serious medical need, a prisoner must allege facts showing that a defendant was subjectively aware of facts from which an inference of substantial risk of serious harm could be drawn, that the defendant actually drew that inference, and that the defendant disregarded the risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Deliberate indifference is an extremely high standard to meet. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013) (quoting *Gobert*, 463 F.3d at 346). Moreover, a "[d]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm." *Id.* (quoted case omitted).

---

[1] The U.S. Supreme Court has granted certiorari in *Nielsen v. Watanabe*, No. 25-417, 2026 WL 1780123, at *1 (U.S. June 22, 2026), to decide whether the *Bivens* damages remedy extends to Eighth Amendment claims of deliberate indifference to medical needs by federal officials.

Considering all Dightman's allegations and the medical records and correspondence submitted with his questionnaire answers under this standard, Dightman cannot establish that alleged conduct of either Defendant rises above negligence or mere disagreement over the course of treatment.

**A. Dightman fails to allege deliberate indifference by Dillard or Winbush.**

Dightman's allegations against Physician Assistant Lavonda Dillard and Health Services Administrator Tammy Winbush principally concern the manner and timing of his post-surgical care. He alleges that they failed to provide appropriate pain medication and medical equipment, failed to ensure compliance with his physicians' instructions, permitted him to remain in inappropriate housing, and delayed his orthopedic follow-up. Doc. 9 at 1-2. Although Dightman's allegations describe potential deficiencies in his care, these alleged deficiencies do not rise to the level of deliberate indifference required to state a legally cognizable claim. *Gobert*, 463 F.3d at 346.

Dightman's pleadings and supplemental evidence reveal that, on June 10, 2023, Dightman sent Health Services a detailed complaint concerning his return from Vibra, his placement on the second floor, his falls, his pain medication, and his anticipated orthopedic follow-up. Doc. 9-2 at 1. Health Services responded two days later. The response reflects that staff reviewed Dightman's Vibra discharge paperwork, determined that Dr. Berry had not written a prescription for the medication Dightman believed he was supposed to receive, addressed his upstairs housing assignment by moving him to a lower floor and lower bunk, reviewed the discharge instructions concerning physical therapy and use of a walker and orthotic boot, advised him that he would be returned to his surgeon for follow-up when the outside provider was available, and administered a pain injection that same day. Doc. 9-2 at 2. There is no indication

that medical personnel ignored Dightman's complaints or consciously refused necessary treatment. To the contrary, the information supplied by Dightman demonstrates that Health Services investigated his complaints and took responsive measures. That Dightman believes staff misunderstood his discharge instructions, removed his wheelchair prematurely, should have prescribed different pain medication, or should have obtained outside follow-up sooner might support negligence or medical-malpractice allegations. But incorrect medical judgment or disagreement concerning the appropriate treatment does not, without more, establish the necessary deliberate indifference. *Gobert*, 463 F.3d at 346; *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

Dightman's subsequent correspondence likewise reflects continued efforts to obtain outside orthopedic care rather than an intentional refusal to provide it. When he inquired about his orthopedic appointment in August 2023, Health Services responded that it was "waiting for an appointment date." Doc. 9 at 25. Dightman later complained that an August appointment had been missed and that his follow-up remained pending. Doc. 9-2 at 8-9. A delay in medical care may violate the Eighth Amendment when prison officials are deliberately indifferent and the delay results in substantial harm. *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006). But delay alone does not establish deliberate indifference. The allegations must permit an inference that the defendant knew necessary treatment was being withheld and consciously chose not to act.

These facts distinguish this case from *Vaughn v. Bassett*, No. 22-10962, 2024 WL 2891897, at *1 (5th Cir. June 10, 2024). There, the Court of Appeals for the Fifth Circuit held that allegations that prison health administrators knowingly failed to provide prescribed pain medication and failed to facilitate recommended specialist treatment were sufficient to survive screening. *Id.* at *6-7. Here, however, Dightman's own exhibits reflect that medical staff

responded to his complaints, investigated his discharge instructions, changed his housing, provided pain treatment, and continued working to obtain outside follow-up. Thus, unlike the allegations accepted as true in *Vaughn*, Dightman's pleadings and exhibits, even accepted as true, do not plausibly show a conscious refusal to provide prescribed or medically necessary care.

Importantly, the Eighth Amendment prohibits deliberate indifference, not medical negligence. Because the facts alleged and documented by Dightman do not permit a plausible inference that Dillard or Winbush subjectively knew of and deliberately disregarded a substantial risk to his health, his constitutional claims against them should be dismissed for failure to state a claim.

**B. Dightman fails to state a constitutional claim against Dr. Berry.**

Dightman's allegations against Dr. Leonard Berry likewise sound primarily in medical negligence.[2] He contends Berry inadequately rehabilitated him, failed to consult with his orthopedic surgeon, prematurely cleared him to walk, failed to provide appropriate medication, and improperly represented that physical therapy had been provided. Doc. 9 at 2. These allegations challenge Berry's professional judgment and the adequacy of the treatment he provided. Even assuming that Berry's decisions were erroneous, as outlined *supra*, neither medical malpractice nor negligent treatment constitutes deliberate indifference. *Gobert*, 463 F.3d at 346; *Varnado*, 920 F.2d at 321.

---

[2] To the extent Dightman intends to assert a fraud claim against Dr. Berry, he alleges only that Dr. Berry "committed medical fraud," without identifying any fraudulent statement or explaining when or where it was made, why it was false, or how he relied on it. Doc. 5 at 3. Further, Dightman does not proffer additional facts concerning this claim in his answers to the MJQ. *See* Doc. 9 at 2. Such conclusory allegations do not satisfy Rule 9(b)'s requirement that fraud be pleaded with particularity. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008). Thus, Plaintiff also fails to state a plausible fraud claim against Dr. Berry.

The records Dightman submitted further reflect that Berry treated him during an extended rehabilitation admission following surgery. Those records document pain medication, rehabilitation, and restrictions on his activity, rather than a refusal to provide medical care. *See* Doc. 9-1 at 2-9; Doc. 9-2 at 11. At bottom, Dightman's disagreement with the adequacy of Berry's rehabilitation decisions does not establish an Eighth Amendment claim.

Finally, a *Bivens* damages remedy generally is unavailable against employees of a private entity providing medical or correctional services to federal prisoners where state tort law provides an alternative damages remedy. *Minneci v. Pollard*, 565 U.S. 118, 125-31 (2012). Thus, to the extent Berry was a privately employed contract physician, Dightman may have the right to pursue any available state-law remedy against Berry, but cannot maintain a *Bivens* claim against him.

**C. Dightman fails to allege personal involvement by Rivers or Jenkins.**

The claims against Warden Rivers and Assistant Warden Jenkins fail because Dightman does not allege facts showing their personal participation in any unconstitutional act. A *Bivens* action imposes liability only for a defendant's own conduct; supervisory officials are not liable merely because they occupy positions of authority over employees who allegedly violated the Constitution. *Iqbal*, 556 U.S. at 676.

The MJQ specifically directed Dightman to identify Rivers's personal acts or omissions and the facts showing that Rivers personally participated in or authorized the challenged conduct. Doc. 9 at 15-16. Dightman responded that Rivers was liable because he was the warden and because he failed to train staff, but he answered "NA" when asked to identify facts showing Rivers's personal participation. Doc. 9 at 2. His allegations against Jenkins are also devoid of any specific act, knowledge, or direction attributable to Jenkins. *Id.*

At best, Dightman's allegations against Rivers and Jenkins are impermissibly premised on supervisory liability and therefore fail to state a constitutional claim against either.

**D. FTCA claims cannot proceed against the named Defendants.**

To the extent Plaintiff seeks relief under the FTCA for his ankle injury, he has not named the proper defendant. The FTCA provides a limited waiver of the United States' sovereign immunity for certain torts committed by federal employees acting within the scope of their employment. 28 U.S.C. §§ 1346(b), 2679. But "[t]o sue successfully under the FTCA, a plaintiff must name the United States as the sole defendant." *McGuire v. Turnbo*, 137 F.3d 321, 324 (5th Cir. 1998); *see also Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988) (holding that an FTCA claim against a federal agency or employee rather than the United States must be dismissed for want of jurisdiction).

Dightman does not name the United States as a defendant. Instead, he names as defendants individual BOP officials, Dr. Berry, and the BOP Regional Office. Doc. 5 at 1, 3; Doc. 9 at 1. Although Dightman's attachment of the BOP's April 3, 2025, denial of his administrative tort claim indicates that he pursued the administrative process, *see* Doc. 5 at 8-9, exhaustion does not cure his failure to name the United States as the defendant in this Court proceeding. Thus, the Court lacks subject-matter jurisdiction over any FTCA claim asserted against the presently named defendants. *See Galvin*, 860 F.2d at 183.

That defect, however, may be cured by amendment. *See McGuire*, 137 F.3d at 324-26. Because Dightman is proceeding *pro se* and his pleadings indicate that before filing this action, he exhausted his administrative tort claim remedy as pertains to his ankle injury, he should be afforded an opportunity to amend his complaint to name the United States as the defendant to his

FTCA claim. However, if he fails to timely amend upon being granted leave to do so, his FTCA claim should be dismissed without prejudice for lack of subject-matter jurisdiction.

## IV. RECOMMENDATION

For the reasons stated, Dightman's complaint should be **DISMISSED WITH PREJUDICE** under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief can be granted. Dightman's FTCA claim for his ankle injury against the presently named defendants should be **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction; however, Dightman should be granted leave to amend his FTCA claim to name the United States as the proper defendant.

**SO RECOMMENDED** on October 16, 2026.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to object to 14 days).